DAVID L. FIOL (SBN: 203546)
NATHANIEL M. LEEDS (SBN: 246138)
BRENT, FIOL & PRATT, LLP
1000 Fourth St., Ste. 750
San Rafael, CA 94901
Telephone: (415) 839-8370
Facsimile: (415) 373-4420
Attorneys for Plaintiffs MARGARET WARD, in her personal capacity, and as executor of the estate of Earl Ward, Deceased; KEVIN WARD; and INA WARD, surviving heir of JEFF WARD, Deceased

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET WARD, in her personal capacity, and as executor of the estate of Earl Ward, Deceased, KEVIN WARD and INA WARD, surviving heir of JEFF WARD, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>THE COUNTY OF MENDOCINO, a municipal corporation, SHERIFF THOMAS D. ALLMAN, individually and in his official capacity as Sheriff of THE COUNTY OF MENDOCINO, LORRIE KNAPP, MICHAEL GRANT, CALIFORNIA FORENSIC MEDICAL GROUP, INC, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER and DOES 1 THROUGH 50, INCLUSIVE<br><br>Defendants. | Case No. 3:17-cv-00911<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>1) **VIOLATION OF 42 USC § 1983: FOURTEENTH AMENDMENT**<br>2) **VIOLATION OF 42 USC § 1983: SUPERVISOR LIABILITY**<br>3) **ELDER ABUSE**<br>4) **WRONGFUL DEATH BASED ON MEDICAL NEGLIGENCE**<br><br>**AND**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs MARGARET WARD, KEVIN WARD and INA WARD (collectively "Plaintiffs") allege generally against Defendants THE COUNTY OF MENDOCINO, SHERIFF THOMAS D. ALLMAN, individually and in his official capacity as Sheriff of THE COUNTY OF MENDOCINO, CALIFORNIA FORENSIC MEDICAL GROUP, INC, ("CFMG") DR. MICHAEL MEDVIN, DR. MARVIN TROTTER and DOES 1-50 (collectively "Defendants") as follows:

# INTRODUCTION

1. On the evening of March 20, 2016, Earl Ward, a 77 year-old retired police officer, high school basketball coach and Navy veteran, was taken into custody by the Mendocino County Sheriff's Department. Mr. Ward was suffering from dementia which made him prone to confusion and uncontrollable rages. On the night of his arrest Mr. Ward's wife of 46 years, MARGARET WARD, had called officers to assist her with her husband. After officers arrested Mr. Ward he was transferred to the Mendocino County Jail in Ukiah where he remained in custody until April 16, 2016. During his time in custody Mr. Ward's medical needs were recklessly neglected, he showed a marked decline in mental health, fell repeatedly and was allowed to become severely malnourished and dehydrated. On April 16th Mr. Ward was found lying on the floor of his jail cell in pain, highly disoriented and suffering from several spine fractures, multiple broken ribs, internal bleeding, a partially collapsed lung, dehydration and acute kidney failure. The orthopedic injuries Mr. Ward suffered in the Mendocino County Jail required surgery, which led to complications and ultimately to Mr. Ward's death on May 30, 2016.

2. This was not the first incident in the Mendocino County Jail in which a mentally ill man was mistreated and died. For example, on or about June 11, 2014 a schizophrenic man, Steven Kellogg Neuroth, died in the same facility after being improperly cared for and restrained.

# PARTIES AND JURISDICTION

3. Mr. Ward died on May 30, 2016 and was survived by his wife, Plaintiff MARGARET WARD, and two sons: Plaintiff KEVIN WARD, a Jeff Ward, who post-deceased Mr. Ward.

4. Plaintiff INA WARD is Jeff Ward's surviving wife and heir and brings survival claims on behalf of Jeff Ward's Estate.

5. There are no known heirs or potential heirs to Mr. Ward's estate who have not either joined as plaintiffs in this action or waived their claims.

6. Mr. Ward was born on November 18, 1938. At all times relevant to this complaint Mr. Ward was an "elder" within the meaning of California Welfare and Institutions Code section 15610.27.

//

7. MARGARET WARD was married to Mr. Ward for 46 years and lived with him at the time of Mr. Ward's death and has been named as the executor of Mr. Ward's estate by the Mendocino County Superior Court on September 29, 2016 (Case No. CVPB 16-26682). Accordingly, MARGARET WARD has and is asserting standing to bring the claims described herein as follows:

    a. MARGARET WARD has standing to bring a survival actions under both state and federal law as Mr. Ward's successor in interest pursuant to California Code of Civil Procedure section 377 *et seq.* and brings this survival action on behalf of Mr. Ward's estate.

    b. As executor of Mr. Ward's estate MARGARET WARD is Mr. Ward's personal representative within the meaning California Code of Civil Procedure section 377.60, and therefore has standing to and does pursue a California a state wrongful death cause of action on behalf of all persons who have such claims.

    c. In losing her husband, Mr. Ward, MARGARET WARD has standing to assert her own individual Federal claims under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourteenth Amendment of the United States Constitution.

8. KEVIN WARD is the surviving son of Mr. Ward and in losing his father has standing and does assert his personal claims under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourteenth Amendment of the United States Constitution.

9. INA WARD is the surviving spouse of Mr. Ward's son, Jeff Ward. Jeff Ward survived Mr. Ward, but died prior to the initiation of this action. In life Jeff Ward had a personal claim under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourteenth Amendment of the United States Constitution which survives. INA WARD has standing to bring a survival actions under both state and federal law as Jeff Ward's successor in interest pursuant to California Code of Civil Procedure section 377 *et seq.* and brings this survival action on behalf of Jeff Ward's estate.

10. Defendant THE COUNTY OF MENDOCINO is a public entity established by the laws of the Constitution of the State of California, and owns, operates, manages, directs, and controls the Mendocino County Jail and the Mendocino County Sheriff's department, also a public entity, which employs the other defendants in this action. THE COUNTY OF MENDOCINO is within the Northern

District of California.  Plaintiffs submitted a California Government Code 910 *et seq.* claim to THE COUNTY OF MENDOCINO on September 19, 2016, which was rejected on October 4, 2016.

11. Defendant SHERIFF THOMAS D. ALLMAN was employed by Defendant THE COUNTY OF MENDOCINO as Sheriff for THE COUNTY OF MENDOCINO.  He is being sued in his individual and official capacity as Sheriff for THE COUNTY OF MENDOCINO.

12. Defendants LORRIE KNAPP and MICHAEL GRANT are, and at all times relevant for this complaint, were, uniformed Sheriff's deputies employed by THE COUNTY OF MENDOCINO to work in the Mendocino County Jail, in Ukiah, California, under the supervision of SHERIFF THOMAS D. ALLMAN.  They are being sued in their individual and official capacities, and as agents and employees of SHERIFF THOMAS D. ALLMAN and THE COUNTY OF MENDOCINO.

13. CFMG is a California Corporation based in Monterrey County, California that offers and manages medical services in jails and prisons throughout California including within the Northern District of California.  The conduct of CFMG alleged herein occurred in the Mendocino County Jail in Ukiah, California.

14. DR. MICHAEL MEDVIN is a doctor licensed to provide medical care in California with a principal place of business in Santa Rosa, California, which is within the geographic jurisdiction of the Northern District of California.

15. DR. MARVIN TROTTER is a doctor licensed to provide medical care in California with a principal place of business in Ukiah, California, which is within the geographic jurisdiction of the Northern District of California.

16. The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendants DOES 1 through 50 inclusive, are unknown to Plaintiffs who therefore sues Defendants by such fictitious names; and leave of court will be asked to amend this complaint to show their true names and capacities when the same have become ascertained.

17. Each of the Defendants named here as a DOE is legally responsible in some manner for the events and happenings referred to here, and proximately and legally caused injury and damage to plaintiffs as alleged here. Plaintiffs pray leave to amend this complaint when their true names have been ascertained.

18. At all times mentioned herein, the defendants, DOES 1 through 25, inclusive, and each of them, were the agents, servants and employees of the other Defendants, and at all times herein mentioned, were acting within the course and scope of their agency and employment with said principal and/or employer.

19. At all times mentioned herein, the defendants DOES 26 through 50, inclusive, and each of them, were the co-joint-venturers, masters and employers of the remaining Defendants, and each of them, who, at all times herein mentioned, were acting within the course and scope of their agency, employment and/or joint venture.

20. Plaintiffs are informed and believe that at all times here mentioned, certain of the Defendants DOES are the successors in interest to each of the remaining Defendants and on that basis, are liable for any act, or omission of said Defendants alleged here.

21. At all times mentioned here, Defendants, and each of them, were the agents and employees of the remaining Defendants and were at all times acting within the course and scope of said agency and employment.

22. The acts and omissions of all Defendants (excluding DR. MICHAEL MEDVIN, and DR. MARVIN TROTTER) as set forth herein were at all material times pursuant to the actual customs, policies, practice and procedures of the Mendocino County Sheriff's Department, and/or THE COUNTY OF MENDOCINO.

23. Jurisdiction and venue are proper in Northern District of California for the following reasons:

    a. Federal jurisdiction over the claims stated under 42 U.S.C. § 1983 is proper in this Court under 28 U.S.C. § 1331, which invests federal district courts with original jurisdiction over all claims arising under federal law;

    b. Federal jurisdiction in this Court exists over the state law claims stated herein because they arise out the same transaction, occurrence, or series of transactions or occurrences as the claims under 42 U.S.C. § 1983.

//
//

c. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1)&(2) because all known defendants reside within the district, and events and omissions alleged herein occurred in Ukiah, California, which is within the confines of this district.

**COMMON LIABILITY ALLEGATIONS**

24. This case arises out of the improper incarceration, care and medical treatment of Earl Ward that began on or about March 20, 2016 when Mr. Ward was held as a pretrial detainee in the Mendocino County Jail, in Ukiah, California.

25. On March 21, 2016 Mr. Ward became agitated, was observed by Defendants hitting the window within his cell and stating that he wanted to die; Defendants' employees observed that Mr. Ward was confused and kept on pushing on the door of his cell; he was placed in a safety cell.

26. On March 22, 2016 MARGARET WARD talked with an unidentified employee of defendant, CFMG, sued herein under a fictitious name and explained that over the weeks prior to his arrest Mr. Ward had become confused, delusional and paranoid.

27. Mr. Ward continued to exhibit confusion, delusions and paranoia within the jail; Defendants observed the following on March 22nd:

a. At 5:30 a.m. Mr. Ward was seen standing at his door, smiling, and trying to push out.

b. At 8:15 a.m. Mr. Ward was observed staring at the wall, holding a drinking cup on his head.

c. At 9:30 a.m. a member of the jail staff observed that Mr. Ward appeared confused, although he spoke clearly, he had what was described as a "disorganized thought process."

28. On March 24, 2016 a social worker from the United States Department of Veteran's Affairs ("VA") medical services observed that Mr. Ward was unable to articulate why he had been arrested. This state of confusion was readily apparent to Defendants.

29. On March 28, 2016 Defendants noted that Mr. Ward refused to take his medications.

30. On March 28, 2016 a social worker from the VA medical services talked to Mr. Ward and Mr. Ward expressed his erroneous belief that he was in Chicago.

//

31. On April 2, 2016 defendant MICHAEL GRANT observed Mr. Ward standing on his bunk trying to push his window open.

32. Also on April 2, 2016, defendant LORRIE KNAPP observed Mr. Ward standing on his bunk, and then fall backwards, possibly hitting his head.

33. On April 2, 2016, neither defendant GRANT nor defendant KNAPP made any efforts to intervene prior to Mr. Ward's fall; their failure to do so constituted deliberate indifference to Mr. Ward's medical needs.

34. On April 3, 2016 at 3:40 a.m. Mr. Ward was observed to have a bruise on his head with dry blood and was taken to the Ukiah Valley Medical Center ("UVMC") where UVMC staff noted that Mr. Ward remained asleep through is exam but "[p]atient will wake up but is not oriented to person, place or time. According to deputies, this is the first time he has slept at all that they are aware of since his incarceration [on March 20, 2016]."

35. On April 3, 2016, blood tests performed at UVMC showed that Mr. Ward had an elevated Blood Urea Nitrogen, a sign of dehydration and renal failure. This information was communicated to and noted in jail medical records by unidentified employees of CFMG.

36. On April 3, 2016 DR. MARVIN TROTTER discharged Mr. Ward back to the Mendocino County Jail despite observing that "Patient does have dementia, recently residing in the jail, likely had an acute episode of delirium, probably due to lack of sleep, as it is reported he had not slept for a week and a half prior to presenting to the emergency room. He was on his bunk when he dozed off and fell."

37. Defendants did not undertake adequate fall-risk protection efforts after Mr. Ward's falls on April 2nd and 3rd. Failure to provide fall-risk protection after a known fall is below the standard of care of a reasonable medical professional and, in light of the knowledge of Mr. Ward's propensity to fall, constituted deliberate indifference to Mr. Ward's medical needs.

38. By placing Mr. Ward in an unsupervised cell after April 3rd and depriving him of appropriate medical care, Defendants increased the danger that Mr. Ward would suffer further injury beyond what he would have been exposed to either a) under appropriate medical supervision or b) had he not been retained in custody.

39. On April 6, 2016 an unidentified Licensed Vocational Nurse ("LVN") believed to be an employee of CFMG, and sued herein under a fictitious name, noted in the jail medical records that the LVN observed that Mr. Ward was showing increased agitation, confusion and delusion, and was continually trying to climb out of a fixed window and presented an increased fall risk.

40. Defendant DR. MICHEAL MEDVIN was consulted by the LVN, but Defendants did not undertake adequate efforts to address Mr. Ward's declining mental health or increased risk that he would continue to injure himself.

41. Defendants did not undertake adequate fall-risk protection efforts after observing Mr. Ward's attempts to climb within this cell on April 6th. Failure to provide fall-risk protection to a mentally-ill elderly patient who was known to be climbing within his cell was below the standard of care of a reasonable medical professional and, in light of the knowledge of Mr. Ward's propensity to fall and declining mental health, constituted deliberate indifference to Mr. Ward's medical needs.

42. By placing Mr. Ward in an unsupervised cell after observing his cognitive incapacity an inability to care for himself or avoid injury and the depriving him of appropriate medical care, Defendants increased the danger that Mr. Ward would suffer further injury beyond what he would have been exposed to had he been provided appropriate medical supervision within the jail or diverted to a proper custodial setting within a healthcare facility.

43. On April 16, 2016 Mr. Ward was found lying on the floor of his jail cell in pain and highly disoriented and was taken for a further medical evaluation which revealed that Mr. Ward had multiple transverse vertebral fractures, multiple broken ribs, internal bleeding, a partially collapsed lung, dehydration and acute kidney failure.

44. The orthopedic injuries Mr. Ward suffered in the Mendocino County Jail required surgery, which lead to complications and ultimately to Mr. Ward's death on May 30, 2016.

45. As a proximate result of Defendants' misconduct Mr. Ward and Plaintiffs suffered injury including but not limited to the following:

    a. Mr. Ward suffered considerable emotional distress, pain and discomfort as a result of his neglect between March 20, 2015 and his death;

//

b. Mr. Ward incurred significant expenses to pay for the surgical, medical, rehabilitative and palliative care that were necessitated by the injuries he suffered on or about April 16, 2016;

c. Mr. Ward lost his life;

d. Plaintiffs and/or Mr. Ward's estate incurred burial and funeral expenses;

e. Plaintiffs were deprived of Mr. Ward's services (including household services), advice, training, love, companionship, comfort, affection, support, society solace, moral support and Mr. Ward's contribution to Plaintiffs' household and well-being; these losses constitute the loss of a liberty interest under the Fourteenth Amendment.

## COUNT ONE

## 42 USC § 1983

## FOURTEENTH AMENDMENT – PERSONAL CAPACITY -

## AGAINST LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, AND DOES 1-50

Plaintiffs as individuals and on behalf of the estates of Mr. Ward and Jeffrey Ward for a first cause of action, allege against LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50:

46. Plaintiffs incorporate by reference paragraph(s) 1 to 45 above, as though fully set forth here.

47. Defendants LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50 acting under the color of state law in their individual and personal capacities, deprived Mr. Ward of the rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution, to not be deprived of life without due process of law, and to be free from cruel and unusual punishment, by subjecting him, or through their deliberate indifference allowing others to subject him to improper medical monitoring, and a delay and denial of access to medical care for a serious but treatable medical condition, leading to his death.

//

48. Defendants LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50 knew or must have known that Mr. Ward's medical condition was serious but treatable and knew or must have known that he required careful monitoring, and that they further had a duty to provide Mr. Ward reasonable housing to allow for monitoring of his health, yet they deliberately failed to provide for any of those needs.

49. Defendants LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50 acting under the color of state law in their individual and personal capacities, denied Mr. Ward his Fourteenth Amendment right to not be deprived of his life without due process of law by purposefully or through their deliberate indifference denying and refusing proper housing, and/or provide necessary medical care and treatment, and/or by delaying and denying him access to medical care and treatment for a serious but treatable medical condition; and/or causing others to deny and/or delay medical care and treatment to Mr. Ward.

50. As a result of these defendants' deliberate indifference to Mr. Ward's need for medical care and treatment, and their disregard and ignoring of said conditions, Mr. Ward suffered damages, pain and suffering, anxiety, confusion, disorientation, loss of life and deprivation of his constitutional rights in an amount not yet ascertained but to be proven.

51. By the actions and omissions described above, defendants LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50 violated 42 USC § 1983, deprived Mr. Ward and Plaintiffs of the following clearly-established and well-settled constitutional rights protected by the Fourteenth Amendment to U.S. Constitution:

    a. Mr. Ward's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment;

    b. The right of Mr. Ward and Plaintiffs to be free from wrongful government interference with familial relationships, and right to companionship, society and support, as secured by the Fourteenth Amendment.

      c.    The right of Mr. Ward's heirs under the California Wrongful Death Statutes, Cal. Code of Civil Procedure § 377.60 et seq., to future support, love, care, comfort, affection, society, presence, companionship, protection, and, as to MARGARET WARD, deprived of consortium, and thus have suffered pecuniary loss.

52. Defendants subjected Mr. Ward and Plaintiffs to their wrongful conduct, depriving them of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Mr. Ward and his survivors would be violated by their acts and/or omissions.

53. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Mr. Ward, his wife and children sustained injuries and damages as set forth above.

54. The conduct of Defendants LORRIE KNAPP, MICHAEL GRANT, SHERIFF THOMAS D. ALLMAN, CFMG, DR. MICHAEL MEDVIN, DR. MARVIN TROTTER, and DOES 1-50 entitles Plaintiffs to punitive damages and penalties allowable under 42 USC § 1983, Cal. Code of Civil Procedure § 377.34 et seq., and other state and federal law.

55. Plaintiffs are also entitled to reasonable costs and attorney fees under 42 USC § 1988 and applicable federal and California codes and laws.

### COUNT TWO
### 42 USC § 1983
### FOURTEENTH AMENDMENT - SUPERVISORY LIABILITY
### AGAINST SHERIFF THOMAS D. ALLMAN AND DOES 1-50

Plaintiffs as individuals and on behalf of the estates of Mr. Ward and JEFFREY WARD for a second cause of action, allege against SHERIFF THOMAS D. ALLMAN and DOES 1-50:

56. Plaintiffs incorporate by reference paragraph(s) 1 to 55 above, as though fully set forth here.

//
//
//
//

57. On or before March 20, 2016, Defendant SHERIFF THOMAS D. ALLMAN, and DOES 1-50 failed to properly train, assign, supervise, and guide their staff and medical personnel at the Mendocino County Jail and at the Mendocino County Sheriff's Department respectively, to take necessary measures to ensure the health and safety of arrested persons and to ensure that they are provided with all necessary monitoring and medical care.

58. On or about March 20, 2016, and for some time prior thereto and since that time, Defendants SHERIFF THOMAS D. ALLMAN, and DOES 1-50 have either participated in, or known of, or must have known of their subordinates' deliberate indifference in failing to take immediate measures to ensure that a person in custody be provided with all necessary monitoring and medical care to protect his or her health and safety, subsequently causing injuries or deaths. SHERIFF THOMAS D. ALLMAN's knowledge of the shortcomings of his subordinates was based in part, but not exclusively, on the wrongful death in the Mendocino County Jail of a schizophrenic man, Steven Kellogg Neuroth, who was improperly restrained on or about June 11, 2014 in a manner that led to Mr. Neuroth's death; that prior wrongful death of a mentally ill arrestee should have, and did apprise SHERIFF THOMAS D. ALLMAN of the fact that his subordinates did not have proper training in the treatment of mentally ill persons in custody.

59. Notwithstanding the death of Steven Kellogg Neuroth, defendant SHERIFF THOMAS D. ALLMAN took no steps to revise or adopt policies and procedures in order to apprise his subordinates of the proper manner for treating mentally ill persons in custody, and of circumstances in which mentally ill persons in custody should cannot be safely accommodated in the jail.

60. Furthermore, on or before March 20, 2016, defendant SHERIFF THOMAS D. ALLMAN and DOES 1-50 failed to properly supervise the medical services for arrestee-prisoners, in that Mendocino County Jail personnel were not trained to properly classify, house or monitor pretrial detainees suffering from health conditions, including mental health conditions, failed to provide appropriate care to pretrial detainees for serious but treatable medical conditions, and operated without adequate safeguards, audits, or reporting requirements reviewable by supervisors.

//

//

61. Additionally, as a policy making officials for THE COUNTY OF MENDOCINO, defendants SHERIFF THOMAS D. ALLMAN, and DOES 1-50 were responsible for THE COUNTY OF MENDOCINO's unconstitutional customs, policies, practices, and procedures, as well as failures to properly hire, train, instruct, monitor, supervise, evaluate, investigate, manage, and discipline, as described above, and they ratified the misconduct and constitutional violations as described above.

62. Said acts and omissions, customs and practices by defendants SHERIFF THOMAS D. ALLMAN, and DOES 1-50 set in motion a series of acts by their subordinates that they knew or must have known would cause the subordinates to deprive Mr. Ward, the Plaintiffs and Mr. Ward's heirs of their rights as alleged above.

63. As a direct and proximate result of the actions, omissions, and practices of defendants SHERIFF THOMAS D. ALLMAN, and DOES 1-50, as described above, Mr. Ward, the Plaintiffs and Mr. Ward's heirs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees as set forth above.

## COUNT THREE

## CAL. WEL & INST. §§ 15600 *et seq.*

## ELDER ABUSE

## AGAINST ALL Defendants

## (EXCLUDING DR. MICHAEL MEDVIN AND DR. MICHAEL TROTTER)

Plaintiffs as individuals and on behalf of the estates of Mr. Ward and JEFFREY WARD for a third cause of action, allege against all Defendants (excluding DR. MICHAEL MEDVIN and DR. MICHAEL TROTTER):

64. Plaintiffs incorporate by reference paragraph(s) 1 to 63 above, as though fully set forth here.

65. Mr. Ward was at all times an "elder" within the meaning of California Welfare and Institutions Code section 15610.27 owing to the fact that he resided in the State of California, and was over 65 years of age.

66. Once Mr. Ward was taken into custody in the Mendocino County Jail in Ukiah, Defendants, each of them was a person "having care or custody of" Mr. Ward within the meaning of

California Welfare and Institutions Code section 15610.57(a) by virtue of his pretrial detention and housing within their facility.

67. By virtue of the foregoing, Defendants, and each of them, have committed "neglect" as defined in California Welfare and Institutions Code section 15610.57 by:

    a. Their failure to provide Mr. Ward with medical care within the meaning of Section 15610.57(b)(2) by failing to provide appropriate mental health care including supervision;

    b. Their failure to protect Mr. Ward from health and safety hazards within the meaning Section 15610.57(b)(3);

    c. Their failure to prevent dehydration within the meaning of Section 15610.57(b)(4).

68. By virtue of the foregoing, and repeated sentinel events suffered by Mr. Ward between March 20, 2016 and April 16, 2016 at all times during Defendants' care and/or custody of the Mr. Ward, Defendants' failure to address Mr. Ward's decline and protect him from safety hazards was reckless and constituted deliberate indifference to Mr. Ward's medical and mental health needs.

69. By virtue of the foregoing, Plaintiffs are entitled to recover Mr. Ward's pre-death pain and suffering damages and attorney's fees under California Welfare and Institutions Code section 15657.

## COUNT FOUR

## MEDICAL NEGLIGENCE - WRONGFUL DEATH

## AGAINST ALL Defendants

## (EXCLUDING SHERIFF THOMAS D. ALLMAN, LORRIE KNAPP and MICHAEL GRANT)

Plaintiffs as individuals and on behalf of the estates of Mr. Ward and JEFFREY WARD for a fourth cause of action, allege against all Defendants (excluding SHERIFF THOMAS D. ALLMAN, LORRIE KNAPP and MICHAEL GRANT):

70. Plaintiffs incorporate by reference paragraph(s) 1 to 69 above, as though fully set forth here.

71. Defendants against whom this cause of action is alleged are private parties, public employees, and public agencies who were lawfully engaged in in the practice of one of the healing arts

and/or operated a custodial facility in which persons are entitled to medical treatment and each of them had assumed responsibility for the medical care and supervision of Mr. Ward.

72. By virtue of the foregoing, Defendants, and each of them, owed a duty of ordinary care to the Mr. Ward, to use that degree of care and skill that a reasonably prudent person and/or facility would use given the Defendants' respective role, function, knowledge, training, expertise and skill and to exercise prudent, reasonable judgment and care in the selection, employment and control of qualified, trained, experienced nurses, nurse practitioners, nursing personnel, orderlies, assistants, aides and employees under their supervision, control, direction, responsibility and authority while performing services and caring for persons within the custody of THE COUNTY OF MENDOCINO including, but not limited to, Mr. Ward.

73. The medical treatment and monitoring provided by Defendants, and each of them, and by Defendants' employees, and each of them, to Mr. Ward, negligently failed to conform to the standard of care both with respect to the care and treatment rendered to Mr. Ward, and with respect to providing Mr. Ward with information about the risks, hazards, or other harmful consequences, that might follow from the treatment and diagnosis Defendants, and each of them, planned for Mr. Ward.

74. At all times herein mentioned, Defendants negligently and carelessly failed to properly ensure the character, quality, ability and competence of individuals, including the remaining Defendants, and each of them, treating patients in said hospital, custodial facility and clinics, and as a proximate result thereof, Mr. Ward died.

75. Before, during, and after said times, Defendants and each of them, so negligently treated, and so negligently cared for Mr. Ward while he was under their care, and so negligently operated, managed, maintained, selected, designed, controlled and conducted their services, activities, personnel and equipment in connection with Mr. Ward's care and treatment that the same proximately caused Mr. Ward's death.

76. Defendants and each of them breached the aforesaid duty of care by:
   a. Failing to provide Mr. Ward with appropriate mental health care;
   b. Failing to take adequate measures to prevent Mr. Ward from injuring himself, including, but not limited to, taking adequate fall-risk prevention precautions;

  c. Failing to monitor Mr. Ward's physical health to ensure that he was adequately nourished and hydrated.

77. As a direct and legal result of the foregoing, Mr. Ward was injured in his health and sustained personal injury leading to his death, and Plaintiffs, and each of them, incurred economic and non-economic damages including, but not limited to, the loss of Mr. Ward's care, comfort, support and society.

78. As a further and direct result of the foregoing, Mr. Ward required extensive medical care and incurred medical expenses in a sum according to proof at trial.

## PRAYER FOR RELIEF

Plaintiffs pray judgment against Defendants, and each of them, as follows:

1. For noneconomic damages according to proof at time of trial;
2. For economic damages according to proof at time of trial;
3. For any exemplary and/or statutory award allowable by law except under those causes of action where such damages cannot be plead under California Code of Civil Procedure § 425.13;
4. For costs of suit here;
5. For prejudgment interest;
6. For attorneys' fees; and
7. For such further relief as the Court may deem proper.

Dated:            BRENT, FIOL & PRATT LLP


                By: _____/s/_____

                Nathaniel M. Leeds
                Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on each and all of the causes of action set forth in this Complaint.

Dated:

By: _____/s/_____

Nathaniel M. Leeds
Attorneys for Plaintiffs

Nathaniel M. Leeds