UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET WARD, et al.,<br>    Plaintiffs,<br>    v.<br>THE COUNTY OF MENDOCINO, et al.,<br>    Defendants. | Case No. 17-cv-00911-PJH<br><br>**ORDER GRANTING KINDRED'S MOTION TO DISMISS**<br>Re: Dkt. No. 66 |

Defendant Kindred Healthcare Operating Inc.'s ("Kindred") motion to dismiss count three of plaintiffs' Third Amended Complaint ("TAC"), for elder abuse, came on for hearing before this court on May 2, 2018. Plaintiffs appeared through their counsel, Nathaniel Leeds. Defendant appeared through its counsel, Robert Sanford. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby grants defendant's motion, for the reasons stated at the hearing and the following reasons.

**BACKGROUND**

The survivors of Earl Ward ("Ward") bring this case. For purposes of this motion to dismiss, the court considers the non-conclusory facts as pled. The court has recounted many of the complaint's allegations in previous orders (Dkts. 39, 51), so an abbreviated recitation of facts relevant to this motion follows.

Ward was a 77-year-old man who suffered from dementia. TAC ¶ 1. He was taken into custody by the Mendocino County Sheriff's Department following a call to the police by his wife, Margaret Ward. TAC ¶ 1. He was arrested on March 20, 2016 and

held in custody at the Mendocino County Jail, where he suffered numerous injuries. TAC ¶¶ 1, 57.

On April 16, 2016, Ward was discovered lying on the floor with multiple vertebral fractures and broken ribs, internal bleeding, a partially collapsed lung, and acute kidney failure. TAC ¶ 57. Ward underwent surgery on April 22, 2016 at Santa Rosa Memorial Hospital and was discharged to the care of Magnolia Manor on May 18, 2016. TAC ¶¶ 58–59. Defendant Kathy Goodman cared for Ward at Magnolia Manor in the scope of her employment by defendant Kindred. TAC ¶ 60. She cared for Ward's surgical wounds during the time that he was a resident of Magnolia Manor. TAC ¶¶ 60–61. Goodman was operating under physician orders to change Ward's wound dressings daily and to notify Ward's doctor if his surgical wound had redness/bleeding and/or drainage. TAC ¶ 61.

Plaintiffs allege that from May 21, 2016 to May 26, 2016, Goodman observed that Ward's wound was increasingly draining, that his pain was increasing, and that the wound site had increased in diameter. TAC ¶¶ 62–64. Plaintiffs allege that Goodman did not inform doctors of any of these events, even though the physician ordered that he be notified of those events, and that Goodman instead used products to dress Ward's wounds that were not ordered by the physician. TAC ¶¶ 61–65.

On May 27, 2016, Ward was readmitted to Santa Rosa Memorial Hospital. TAC ¶ 66. His surgical wound was infected by MRSA, and he died on May 30, 2016, with the causes of death listed as sepsis, MRSA, wound infection, and spinal fusion procedure. TAC ¶¶ 66–68.

Plaintiffs Margaret Ward (in her personal capacity, and as the executor of Ward's estate), Kevin Ward, and Ina Ward (surviving heir of Jeff Ward, deceased) assert four claims against various defendants: (1) 42 U.S.C. § 1983 for Fourteenth Amendment violations in certain defendants' personal capacities; (2) 42 U.S.C. § 1983 for Fourteenth Amendment violations in certain defendants' capacities as supervisors; (3) elder abuse; and (4) wrongful death based on medical negligence. See TAC.

The present motion was brought by Kindred to dismiss plaintiffs' third claim, elder abuse, against Kindred. Kindred's counsel sought to join defendant Goodman to Kindred's motion in Kindred's reply brief. Dkt. 71 at 2 n.1. That request to join Goodman to the present motion is DENIED. The court addresses Kindred's motion to dismiss plaintiffs' claim for elder abuse against Kindred.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.

3

Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B.    Analysis**

Elder abuse claims arise under the Elder Abuse Act ("the Act") found in sections 15600 et seq. of the Welf. & Inst. Code ("WIC"). The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an "elder"—a "person residing in this state, 65 years of age or older." WIC § 15610.27. The statute provides for recovery of costs and attorneys' fees where a plaintiff proves by clear and convincing evidence that (1) the defendant is a caretaker or custodian of an elder; (2) the defendant is liable for physical abuse or neglect, and (3) the defendant is guilty of "recklessness, oppression, fraud, or malice" in the commission of the abuse. See Winn v. Pioneer Med. Grp., Inc., 63 Cal. 4th 148, 161 (2016); Worsham v. O'Connor Hospital, 226 Cal. App. 4th 331, 336 (2014); WIC §§ 15610.57, 15657. A claim against an employer based upon the acts of an employee also requires that (4) a managing agent authorized or ratified the activities. WIC § 15657(c).

Plaintiffs must sufficiently plead each element to state a claim against Kindred.

**1.    Caretaker or Custodian**

The Elder Abuse Act does not apply unless the defendant health care provider had a caretaking or custodial relationship with the elder patient, involving ongoing responsibility for one or more basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance. Winn, 63 Cal. 4th at 153–55. "It is the nature of the elder or dependent adult's relationship with the defendant—not the defendant's professional standing [as a health care provider]—that makes the defendant potentially liable for neglect." Id. at 152. A plaintiff must allege, as a distinct element, that the defendant had a caretaking or custodial relationship with the elder patient. Winn, 63 Cal. 4th at 162 (the Act "imposes a caretaking or custodial prerequisite").

At the hearing on the motion, defendant's counsel agreed that Kindred was providing custodial as well as other caretaker services for Ward. Defendant instead

4

argues that the general custodial care relationship between Kindred and Ward is not the relevant inquiry—rather, the medical nature of the particular services Kindred allegedly provided requires that the claim be considered as one for medical negligence rather than elder neglect.

However, this element requires a "substantial caretaking or custodial relationship, involving ongoing responsibility for one or more basic needs, with the elder patient[.]" Winn, 63 Cal. 4th at 152. This distinct element focuses on "the nature of the elder or dependent adult's relationship with the defendant" rather than the particular actions that gave rise to the complaint. Id. Plaintiffs allege that Ward was discharged to the care of Kindred following major surgery and was in Kindred's custody and care "by virtue of his housing at the residential care facility." TAC ¶¶ 58–59, 93. As such, plaintiffs have sufficiently pled that Kindred had a caretaking or custodial relationship with Ward during the relevant period.

### 2. Neglect

The parties dispute whether it is possible for a health care provider to neglect an elder under the Act while providing medical services. Defendant argues that the provision of medical services cannot be actionable under the Act, because inadequate provision of medical services, as opposed to withholding of medical services, can constitute only professional negligence and not elder neglect under WIC § 15657.2.

Neglect within the meaning of WIC § 15610.57 refers to "the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." Delaney v. Baker, 20 Cal. 4th 23, 34 (1999) (discussing the "former section 15610.57," although the relevant language is substantively the same as the current version); Winn, 63 Cal. 4th at 160. Actions brought against health care providers who engage in reckless neglect are "subject to section 15657's remedies"—the Act does not provide a blanket exemption for health care providers performing "any act directly related to [their] performance of professional services." Delaney, 20 Cal. 4th at 31, 37 (internal quotation

marks omitted).

The California Supreme Court has rejected the argument that the "professional negligence" standard "applies to any actions directly related to the professional services provided by a health care provider" because doing so would lead to the "anomalous result" that "[a] custodian who allowed an elder or dependent adult in his or her care to be become malnourished would be subject to 15657's heightened remedies only if he or she was *not* a licensed health care professional." Delaney, 20 Cal. 4th at 35. Rather than classifying an act as a health care activity or a caretaking activity, the Delaney court provided clear guidance: "if the neglect is 'reckless[],' or done with 'oppression, fraud or malice,' then the action falls within the scope of section 15657 and as such cannot be considered simply 'based on ... professional negligence' within the meaning of section 15657.2."[1] Delaney, 20 Cal. 4th at 35.

Here, plaintiffs allege that Ward's physician ordered that he was to be notified if Ward had any wound redness/bleeding and/or drainage from the surgical site, that Ward had those conditions, and that Kindred's employee Goodman did not follow the doctor's order by notifying the physician but instead treated the wound in a manner "that had not been ordered by Mr. Ward's physician." TAC ¶¶ 61–65. The question is whether plaintiffs adequately allege that Kindred through its employee Goodman neglected Ward under the Act, regardless of whether the alleged acts of neglect can also be characterized as medical services. The allegations that Goodman intentionally defied physician orders by failing to notify the physician when she observed Ward's wound developing the very symptoms the doctor warned of is sufficient to allege neglect under the Act.

### 3. Recklessness, Oppression, Fraud, or Malice

---

[1] WIC § 15657.2 clarifies that the Act does not apply a "professional negligence" standard to health care providers and that the attorneys' fees, costs, damages cap waiver, and other damages provisions of § 15657 do not apply to regular negligence or malpractice claims brought against health care providers treating elders. It does not exclude health care providers from the Act, nor does it exclude acts of reckless neglect that can be described as the provision of medical services. Delaney, 20 Cal. 4th at 35.

6

"The Elder Abuse Act does *not* apply to simple or gross negligence by health care providers." Worsham, 226 Cal. App. 4th at 336. WIC § 15657 applies only when "the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of [the] abuse[.]" WIC § 15657.

"Recklessness refers to a subjective state of culpability greater than simple negligence, which has been described as a deliberate disregard of the high degree of probability that an injury will occur. Oppression, fraud and malice involve intentional or conscious wrongdoing of a despicable or injurious nature." Sababin v. Superior Court, 144 Cal. App. 4th 81, 88–89 (2006) (citations and internal quotation marks omitted); Delaney, 20 Cal. 4th at 31–32. "Recklessness, unlike negligence, involves more than inadvertence, incompetence, unskillfulness, or a failure to take precautions but rather rises to the level of a conscious choice of a course of action ... with knowledge of the serious danger to others involved in it." Delaney, 20 Cal. 4th at 34 (citation and internal quotation marks omitted).

The court finds that plaintiffs have sufficiently pled recklessness, oppression, fraud, or malice. Assuming the allegations are true, a trier of fact could find recklessness where a caretaker intentionally ignored a physician's care plan, where the surgical wound that was the express subject of that care plan was worsening daily, and where the wound was treated in a manner contrary to the care plan rather than being reported to the physician. Such conduct sufficiently alleges deliberate disregard of a high degree of probability that the patient will suffer injury, and a finder of fact could find it reckless. See Sababin, 144 Cal. App. 4th at 89–90.

### 4. Authorization or Ratification By a Managing Agent

To bring an Elder Abuse Act claim against an employer for the acts of an employee, the Act requires plaintiffs allege the "standards set forth in subdivision (b) of Section 3294 of the Civil Code[.]" WIC § 15657(c). Cal. Civ. Code § 3294(b) in turn provides, in relevant part:

> An employer shall not be liable for damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

This element requires plaintiffs to allege both that (1) Kindred had advance knowledge of Goodman's unfitness and employed her with a conscious disregard of the rights or safety of others; or that Kindred authorized or ratified Goodman's wrongful conduct; or that Kindred was personally guilty of oppression, fraud, or malice; and (2) that such act was done by an officer, director, or managing agent of the corporation.

"[T]he term 'managing agent' [under that statute] . . . include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." White v. Ultramar, Inc., 21 Cal. 4th 563, 566–67 (1999). The ability to hire and fire alone is not necessarily enough. Id. at 565. The determination is "a question of fact for decision on a case-by-case basis." Id. at 567.

Regarding the first requirement, plaintiffs attempt to allege that Kindred ratified Goodman's wrongful conduct. They fail to adequately do so. Plaintiffs allege in conclusory fashion that Goodman's acts were done "with the consent and/or ratification of KINDRED" (TAC ¶¶ 62–63, 65), but they allege no facts in support other than that Goodman "noted" Ward's condition at various times (presumably in a medical chart, although that is not alleged). Plaintiffs fail to allege that a supervisor or anyone else even knew of, much less authorized or ratified, any of the conduct underlying plaintiffs' claim: Goodman's notations about Ward's condition, the physician's care plan, and Goodman's subsequent actions (or inaction) in light of that information when caring for Ward. In absence of the specific ratifying conduct, plaintiffs also fail to allege plausible facts that "permit the court to infer more than the mere possibility of misconduct[.]" Iqbal, 556 U.S.

8

1 at 679. Plaintiffs must plead "factual content that allows the court to draw the reasonable

2 inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

3 Regarding the second requirement, plaintiffs must plead that an officer, director, or

4 managing agent at Kindred authorized or ratified Goodman's conduct. Plaintiffs'

5 complaint makes no such allegation, and it is far from obvious that an employee at the

6 organizational level of Goodman's direct supervisor—even if she ratified Goodman's

7 conduct—would exercise sufficient independent authority and judgment to determine

8 corporate policy, as plaintiffs must allege.

9 As such, plaintiffs fail to adequately allege that a Kindred managing agent

10 authorized or ratified the conduct underlying their claim for elder neglect.

### 5. Request for Judicial Notice

Plaintiffs ask the court to take judicial notice that on October 12, 2017, Goodman was charged by the California Board of Registered Nursing, Department of Consumer Affairs, for gross negligence in her treatment of Earl Ward, as well as for her treatment of other patients during the same time period, and based on those accusations, faced discipline, including the revocation of her license. Dkt. 70. They also request the court take judicial notice of the nursing board's formal accusation document. Dkt. 70, Ex. A.

The professional nursing organization's actions with respect to Goodman are irrelevant to the present motion. This Rule 12(b)(6) motion tests the adequacy of the pleadings, but plaintiffs do not identify any relevant facts in the materials that would cure their inadequate pleading.

Because the materials are irrelevant to the present motion, the court DENIES THE REQUEST FOR JUDICIAL NOTICE AS MOOT without addressing defendant's arguments.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED with respect to plaintiffs' third claim against defendant Kindred, for elder abuse. Claim 3 against Kindred is DISMISSED WITH LEAVE TO AMEND, to plead facts showing that a managing agent

9

ratified or authorized Goodman's conduct underling plaintiffs' elder abuse claim. Plaintiffs' amended complaint must be filed within 28 days of the date of the hearing.

**IT IS SO ORDERED.**

Dated: May 4, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge